UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ForteCEO SERVICES, INC., d/b/a ForteONE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Joan B. Gottschall |
| TERRA CONTRACTING, LLC, TERRA ABATEMENT SERVICES, LLC, TERRA I/S, LLC, PJT EQUIPMENT LEASING, LLC, and DOWN UNDER MUNICIPAL SERVICES, LLC, | ) ) ) ) ) ) | Case No. 11 C 5179 |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff ForteCEO Services, Inc. ("ForteCEO"), located in Northbrook, Illinois, filed suit in the Northern District of Illinois against Defendants Terra Contracting, LLC and four affiliated Michigan companies (collectively "Terra"), for breach of an agreement under which ForteCEO provided consulting services to Terra ("the Agreement"). Terra now moves the court to dismiss or transfer this case on the grounds of improper or inconvenient venue, pursuant to 28 U.S.C. §§ 1391(a), 1406(a) and 1404(a). The court concludes that venue is proper in Illinois and that the balance of relevant factors weighs against transferring the case to Michigan, which is not a clearly more convenient venue.

### I. BACKGROUND

ForteCEO filed a complaint against Terra for breach of contract on July 29, 2011. The complaint alleges that Terra is in the business of providing environmental remediation and industrial, sewer, and hazardous-material cleaning and abatement

services. In May 2010, Terra executed the Agreement with ForteCEO. Under the Agreement, ForteCEO was to provide consulting services meant to improve Terra's profitability and market value, so that the five affiliated Terra companies could be sold as a unit at or above a target sale price. ForteCEO allegedly charged Terra 75% of its usual fee for its services in exchange for "incentive compensation," including a right to a percentage of any improvement over 2009 levels in Terra's "EBITDA" (earnings before interest, taxes, depreciation, and amortization), as well as a percentage of any increase in Terra's market value above a benchmark figure.

ForteCEO alleges that it provided Terra with consulting services between April 2010 and February 2011. The parties ended their engagement on or about March 9, 2011. During that period, Terra experienced considerable improvement in its EBITDA and market value. Terra, however, allegedly refused to pay ForteCEO the incentive compensation outlined in the Agreement. ForteCEO argues in its complaint that it is entitled to "the appropriate percentage of the improvement" in Terra's EBITDA over its 2009 level, and to a percentage of Terra's market value as of the end of the engagement, which ForteCEO asks this court to determine by ordering an accounting. ForteCEO further asks the court to declare that it is entitled to receive incentive payments for 2011 and subsequent years.

ForteCEO asserts that this court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 and that venue is proper pursuant to 28 U.S.C. §§ 1391(a)(2) and (3). Although Terra and its affiliated companies are owned by Steve Taplin, who has his domicile in Michigan, ForteCEO alleges that one or more of Terra's

affiliated companies regularly do business in Illinois and that Terra Contracting, LLC and Terra Abatement Services, LLC have registered agents in Illinois.

In support of its Motion to Dismiss or Transfer, Terra has submitted the declarations of Bruce Reder and Laura Rosenberg. Reder, Terra's Chief Financial Officer, states that all consulting services provided pursuant to the Agreement were performed by ForteCEO representatives at Terra's location in Kalamazoo, Michigan. Although one ForteCEO employee provided support from his home in Akron, Ohio, no services were peformed in Illinois. (Defs.' Mot. to Dismiss or Transfer Ex. A (Reder Decl.), ECF No. 13.) Rosenberg, Terra's Human Resources Director, also states that ForteCEO's invoices represent "work that was performed at Terra's offices in Kalamazoo." (Defs.' Mot. to Dismiss or Transfer Ex. B (Rosenberg Decl.), ECF No. 14.) Along with the declarations, Terra submits invoices stating that ForteCEO's services were performed in Michigan.

Reder's declaration further states that on July 26, 2010, Terra was hired as a contractor for an oil spill cleanup of the Kalamazoo River. (Defs.' Mot. to Dismiss or Transfer Ex. A (Reder Decl.).) Through the end of 2010, that project generated $15.5 million in revenue for Terra, causing its 2010 revenue to be its highest ever. Terra's EBITDA also increased significantly as a result. (*Id.*)

Terra attached another affidavit, from owner Steve Taplin, to its reply brief. Taplin states that he was contacted at his Kalamazoo office by ForteCEO's owner, Mark Rittmanic, who offered Terra consulting services. Rittmanic then traveled to Michigan to meet with Taplin in January 2010 and February 2010. Taplin subsequently met with Rittmanic once in Northbrook, Illinois. Taplin signed the Agreement on behalf of Terra

3

at his office in Michigan and mailed it to Rittmanic. (Defs.' Reply in Supp. Mot. to Dismiss or Transfer Ex. D (Taplin Decl.), ECF No. 32.)

In turn, ForteCEO submits with its response to Terra's motion the declaration of ForteCEO president David Marshall. (Pl.'s Resp. to Mot. to Dismiss or Transfer Ex. 2 (Marshall Decl.), ECF No. 29.) Marshall states that, from January through May 2010, the Agreement was negotiated between Taplin in Michigan and Rittmanic and Marshall in Northbrook. After Rittmanic completed a business assessment of Terra, the parties met in person in Northbrook, Illinois in April 2010. In May 2010, Marshall executed the final version of the Agreement in Northbrook on behalf of ForteCEO. According to Marshall, the Agreement included no exclusions or exceptions for the Kalamazoo River cleanup or any other specific project or any particular cause of an increase or decrease in Terra's EBITDA. The Agreement, according to Marshall, also included a choice-of-law provision stating that it is governed by Illinois law.[1]

## II. LEGAL STANDARD

Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss a complaint filed in an improper venue. The plaintiff bears the burden of establishing proper venue. *See Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981). A court deciding a Rule 12(b)(3) motion must take the allegations in the complaint as true unless they are contradicted by affidavits, draw all reasonable inferences in favor of the plaintiff, and resolve factual disputes in the plaintiff's favor. *See Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007); *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). "When ruling on a motion

---

[1] The parties have not submitted the Agreement to the court at this point in the litigation, as it is marked confidential, and they have not agreed on a protective order.

to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 809-10 (7th Cir. 2011) (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)).

Under 28 U.S.C. § 1406(a), a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1391 states the bases for proper venue:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).[2] For venue purposes, § 1391(c) provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

If venue is proper but not convenient, a court may also transfer a case pursuant to § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The moving party has the burden of establishing "that the

---

[2] The section was renumbered and slightly altered stylistically in 2011, after this motion was briefed. For the sake of clarity, the court refers to the prior version.

5

transferee forum is clearly more convenient," based on the particular facts of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The district court has the authority to "make whatever factual findings are necessary . . . for determining where venue properly lies." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008).

## III. ANALYSIS

### A. Motion to Dismiss Pursuant to §§ 1391(a)(2) and 1406(a)

Terra asks this court to dismiss or transfer this action pursuant to § 1406(a), arguing that it was filed in the wrong district. Terra contests the propriety of venue based on § 1391(a)(2), which states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." According to Terra, the "substantial part of the events or omissions" requirement is not satisfied because "all of the services which form the basis of [ForteCEO]'s claim were performed at [Terra]'s offices in Kalamazoo." (Defs.' Mot. to Dismiss or Transfer 4.) In addition, the Kalamazoo River cleanup—which caused the alleged increase in Terra's EBITDA and market value of which ForteCEO seeks a percentage—also occurred in Michigan.

ForteCEO responds that "a substantial part of the events or omissions giving rise to the claim" did occur in Illinois, making venue proper under § 1391(a)(2).[3] The court agrees. In deciding whether a substantial part of the events or omissions giving rise to a

---

[3] ForteCEO argues that venue is also proper under 28 U.S.C. § 1391(a)(1) and (c), although this was not asserted as a basis for venue in its complaint. According to ForteCEO, because Terra does business in Illinois and maintains registered agents in Illinois, Terra is also subject to personal jurisdiction in Illinois and is therefore an Illinois resident for the purposes of venue. Terra's reply brief claims that no personal jurisdiction exists over three of the five Terra companies, because they did not have registered agents in Illinois. The court notes that venue is proper under § 1391(a)(1) and (c) for at least two of the defendant companies. Because venue is also proper under § 1391(a)(2), the court will not address whether the other Terra affiliates are also subject to personal jurisdiction in Illinois or whether Terra has waived its challenge to personal jurisdiction.

contract claim took place in a particular district, courts have examined where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred. *See, e.g.*, *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 917 (N.D. Ill. 2010). Courts have also considered where meetings took place in order to consummate a contractual relationship. *See, e.g.*, *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1166 (N.D. Ill. 1995). Here, the contract was negotiated and executed in both Michigan and Illinois. The consulting services were performed in Michigan, but payment was to be made to ForteCEO's offices in Illinois. Meetings took place in both locations. Although venue would also be proper in Michigan, § 1391(a)(2) does not require the court to determine the *best* venue for an action, but merely whether "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in the judicial district in which the action was brought. The court concludes that sufficient events and omissions took place in Illinois to make venue proper in this district under § 1391(a)(2).

**B. Motion to Transfer Pursuant to § 1404(a)**

Terra next argues that the court should transfer this case to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The requirements of a transfer pursuant to 28 U.S.C. § 1404(a) are less stringent than for a transfer pursuant to § 1406(a). As the Seventh Circuit has recognized, deciding whether to transfer a case requires a "flexible and individualized analysis" based on the circumstances of a particular case. *Research Automation, Inc. v. Schrader-Bridgeport*

7

*Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (internal citations omitted). The district court has wide discretion in deciding whether transfer is appropriate. *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir. 1988); *Coffey*, 796 F.2d at 219.

In deciding whether transfer would promote convenience, courts weigh the plaintiff's choice of forum, the convenience to the parties, "the availability of and access to witnesses, . . . the location of material events and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978 (internal citations omitted). Relevant to whether the transfer is "in the interest of justice" are such factors as "docket congestion and likely speed to trial in the transferor and potential transferee forums, . . . each court's relative familiarity with the relevant law, . . . the respective desirability of resolving controversies in each locale, . . . and the relationship of each community to the controversy[.]" *Id.*

The court examines each factor with respect to the present motion.

1. Plaintiff's Choice of Forum

As the plaintiff, ForteCEO's choice of Illinois as the forum for this action carries substantial weight, particularly as it is its home forum. *See Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997). Deference to the plaintiff's choice is rarely disturbed, "unless the balance is strongly in favor of the defendant." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003). Thus, this factor weighs strongly against transfer.

2. Convenience of Parties

In evaluating the convenience of the parties, courts consider "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Genocide Victims of Krajina v. L–3 Servs., Inc.*, 804 F. Supp. 2d 814, 826 (N.D.

Ill. 2011). In its briefs, Terra argues that traveling to Michigan would not be inconvenient for ForteCEO, but it does not argue that keeping the litigation in Illinois would impose a significant inconvenience on Terra or prevent it from participating meaningfully in the litigation. Litigating in another district is bound to be inconvenient for one party or the other, but both parties visited the other's home district at least once during the negotiation of the agreement at issue here. The court therefore views this factor as a draw.

    3. <u>Convenience of Witnesses</u>

A party moving for transfer must show that the original forum is "clearly less convenient for its witnesses." *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 962 (N.D. Ill. 2006). Greater weight is given to the convenience of non-party witnesses, as a party's own employees are "within the party's control." *Int'l Truck & Engine Corp. v. Dow-Hammond Trucks Co.*, 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002).

The parties' Rule 26(a)(1)(A) initial disclosures list as likely witnesses individuals who were involved in negotiating the Agreement and/or have knowledge of the performance of and payment for ForteCEO's consulting services. In its initial disclosures, ForteCEO lists four of its own employees, an unspecified number of Terra's employees, and three third-party witnesses. Two of the latter are based in Illinois and one is based in Michigan. Terra lists five of its own staff and one ForteCEO employee.

The court views this fact as another draw. On one hand, the initial disclosures suggest that Terra will have more party witnesses than ForteCEO. On the other hand, two of the three non-party witnesses identified so far are located in Illinois. Terra argues that "witnesses who will testify as to the performance of the consulting agreement and the

9

reasons for the increase in EBITDA reside in or near Kalamazoo." (Defs.' Mot. to Dismiss or Transfer 8.) But as this is a case involving disputed contract terms, the court anticipates that the most important testimony will be from those witnesses that negotiated the contract, not people with first-hand knowledge of the Kalamazoo River cleanup. Moreover, Terra has not drawn the court's attention to any critical non-party witnesses who are located in Michigan and will have difficulty traveling to Illinois to participate in the litigation.

    4. <u>Situs of Material Events and Access to Sources of Proof</u>

Terra argues that the situs of material events in this case is in Kalamazoo, where the consulting services were performed and the Kalamazoo River oil spill cleanup occurred. According to Terra, it was the oil spill contract that caused Terra's dramatic increase in revenue—to a large part of which ForteCEO now seeks to lay claim. (Defs.' Mot. to Dismiss or Transfer 7.) In its reply brief, Terra stresses that "[t]here is no other more significant event in the context of this lawsuit than the work performed in southwest Michigan" to assist with the cleanup. (Defs.' Reply in Supp. Mot. to Dismiss or Transfer 8.) ForteCEO responds that Terra's argument about the importance of the Kalamazoo River cleanup to this action is a red herring, and that the only non-testimonial evidence relevant to the case will be financial records, which are easily transported. (Pl.'s Resp. to Mot. to Dismiss or Transfer 13-14.)

The court agrees that this case will likely turn on documentary evidence, as the contested issue in the case is not the work Terra performed to clean up the Kalamazoo River, but whether the contract between Terra and ForteCEO required Terra to give ForteCEO a percentage of the increase in EBITDA and market value it experienced as a

result of landing that lucrative project. The evidence will certainly include financial records located in Michigan, but "documents and records are easily transportable (and, indeed, must be copied and delivered to the opponent no matter where the case will be litigated)[,] and their location is not a persuasive reason for transfer." *Simonoff v. Kaplan, Inc.*, No. 09 C 5017, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2010) (unpublished). Terra has not identified any evidence that would be difficult to transport to Illinois. The court thus finds that evidentiary considerations militate neither for nor against transfer.

5. Interest of Justice Factors

Finally, the court considers various factors bearing on the "interest of justice," including the "court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." First, it is, as a rule, better to have claims heard by judges familiar with the applicable state law. Here that is Illinois law. *See Coffey*, 796 F.2d at 221. Contract law, however, is not complex or unsettled, and a Michigan court would have no difficulty applying the applicable Illinois contract law. This factor weighs in favor of keeping the case in Illinois, but only slightly. As to the speed of resolution, according to federal judicial statistics available on www.uscourts.gov, the average time from filing to trial in 2010 was almost the same in the Northern District of Illinois (28.3 months) and the Western District of Michigan (27.5 months).[4] Finally, the court considers whether either Illinois or Michigan has a particular interest in this controversy. Terra argues that Michigan has a compelling interest in the suit because Terra is a Michigan employer that cleaned up an

---

[4] Michigan data were unavailable for 2011 because too few cases were reported in the Western District of Michigan. *See* http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicial CaseloadStatistics/2011/tables/C05Mar11.pdf.

11

historic oil spill in Michigan. (Defs.' Reply in Supp. Mot. to Dismiss or Transfer 9-10.) But the adequacy of the oil-spill cleanup is not at issue here, and the court does not see why Michigan would have a greater interest in a contract claim against a Michigan company than Illinois would have in applying its own state law to a contract claim brought by one of its own employers.

      6.  <u>Summary of the Balance of Factors</u>

Having assessed all relevant factors, the court concludes that Terra has not shown that important factors favor transfer of this case to the Western District of Michigan. In the absence of compelling reasons for a transfer that strongly favor Terra, the court will defer to ForteCEO's choice of forum, which is the Northern District of Illinois. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003).

## IV. CONCLUSION

Because venue is proper in Illinois, and the balance of factors weighs against transferring the case to Michigan, Terra's Motion to Dismiss or Transfer is denied. Terra is ordered to answer the complaint or otherwise plead within 21 days.

ENTER:

      /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 3, 2012