UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ForteCEO Services, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 11-cv-05179 |
| v. | ) | |
| | ) | |
| Terra Contracting, LLC, et al, | ) | Honorable Joan B. Gottschall |
| | ) | |
| Defendants. | ) | Magistrate Judge Maria Valdez |

**PLAINTIFF'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, ForteCEO Services, Inc. ("Forte"), by its attorneys, and for its memorandum in support of its Rule 56 motion for partial summary judgment, states as follows:

**I.      INTRODUCTION**

This case involves the Plaintiff, Forte, a provider of business consulting services, and the Defendants, Terra Contracting, LLC, Terra Abatement Services, LLC, Terra I/S, LLC, PJT Equipment Leasing, LLC and Down Under Municipal Services, LLC (collectively "Terra"), which are engaged in the business of providing, or supporting, environmental remediation services and industrial, sewer and hazardous-material cleaning and abatement services.

Forte and Terra entered into a written agreement ("Agreement") for Forte to provide business consulting services to Terra. During the negotiations for the Agreement, Terra proposed that part of Forte's compensation be incentive-based and the parties agreed to incentive payments for Forte based on certain specific and objective formulas. The incentive formulas are based in large part on Terra's EBITDA at certain specified points in time. EBITDA is an accounting term defined in the Agreement as Earnings Before Interest, Taxes, Depreciation and Amortization.

Soon after Forte began providing services to Terra in April 2010, an underground pipeline located near Marshall, Michigan developed a leak and spilled an estimated 800,000 gallons of crude oil into a waterway of the Kalamazoo River in Michigan. Terra was thereafter hired by Enbridge Energy Partners, LLP ("Enbridge") to provide remediation, cleaning and other services relating to that oil spill. The Enbridge contract was very lucrative to Terra and, at the end of Forte's engagement by Terra, due in part to the revenues received from Enbridge, Terra owed Forte in excess of $1 million in incentive compensation pursuant to the terms of the Agreement. Terra refused to pay Forte the amounts due, asserting that the Enbridge revenues should not be included in Terra's EBITDA for purposes of determining Forte's incentive compensation.

The parties do not dispute the validity of the Agreement, the methods for calculating the incentive compensation or in large part the underlying dollar figures constituting Terra's EBITDA. The main dispute is whether the revenue and earnings, and EBITDA, associated with the Enbridge project should be included in Terra's EBITDA for purposes of calculating the incentive compensation formulas. Forte asserts that the Agreement should be enforced as written and Terra argues that it's not fair to include the Enbridge revenues because the oil spill was a one-time event, Forte did not "earn" the Enbridge revenue and other similar claims not contemplated or included in the Agreement.

The language of the Agreement is unambiguous and provides absolutely no basis for Terra to exclude Enbridge from the incentive compensation calculations. Forte therefore seeks a summary determination from this Court in its favor on Terra's defense and the entry of an order holding that the Enbridge EBITDA is included in the incentive formulas. Forte also seeks

summary judgment on two other contractual terms over which the parties differ, late charges and the length of the incentive payments.

II. **STATEMENT OF FACTS**

In or about late February 2010, Terra engaged Forte to provide a detailed assessment of Terra's business. (Forte's Rule 56 Statement of Material Facts ("SMF"), ¶5; SMF, Ex. A, Affidavit of David Marshall ("Marshall Aff."), ¶3). On May 12, 2010, the parties agreed to and executed a second agreement ("Agreement") for implementation of the recommendations in the assessment, pursuant to which Forte would provide certain delineated services and Terra would compensate Forte in part on a fixed fee basis and in remaining part through agreed incentive compensation formulas. (SMF, ¶6; Complaint, Dkt. #1, ¶18; Defendants' First Amended Answer to Complaint with Affirmative Defenses ("Answer"), Dkt. #51, ¶¶15, 18; SMF, Ex. A, Marshall Aff., ¶4, Ex. 1; SMF, Ex. C, Deposition of Steve Taplin ("Taplin Dep.")[1], 27:13-28:13, Ex. 1). The Agreement was executed by Steve Taplin, Terra's CEO, and David Marshall, Forte's President. (SMF, Ex. A, Marshall Aff., Ex. 1 at pp. 10, 15). Forte began providing its services pursuant to the Agreement in or about late April, 2010 (in anticipation of the execution of the Agreement). (SMF, ¶8; SMF, Ex. A, Marshall Aff., ¶5).

In or about July 2010, Terra was hired by Enbridge Energy Partners, LLP ("Enbridge") to provide remediation and clean-up services relating to an oil spill on the Kalamazoo River and Terra earned substantial revenues from the Enbridge project in 2010 and 2011. (SMF, ¶13; SMF, Ex. A, Marshall Aff., ¶¶8-9; Answer, Dkt. #51, ¶27). Forte's engagement with Terra ended in March, 2011. (SMF, ¶15; SMF, Ex. C, Taplin Dep., 133:8-10; SMF, Ex. A, Marshall Aff., ¶11). Terra refused to pay the incentive amounts due under the Agreement on the grounds

---

[1] Exhibits 3, 4, 19, 25, 26, 31, 35 to Taplin's deposition are not referenced herein and are marked confidential and thus were not filed with the Court. Copies of the Exhibits are included with the Court's courtesy copy.

3

that revenue and expenses related to the Enbridge project should not be included in calculating the incentive amounts owed under the Agreement. (SMF, ¶20; SMF, Ex. A, Marshall Aff., ¶¶15-16; SMF, Ex. C, Taplin Dep., 29:9-14). On July 29, 2011, Forte filed its Complaint for breach of contract and a declaratory judgment. (Dkt. #1).

## III. ARGUMENT

### A. Standards

Summary judgment is not "a disfavored procedural shortcut, but rather [it is] an integral part of the federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986). Summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In determining whether there is a genuine issue of fact, the court should view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). However, the mere existence of "*some*" alleged factual dispute will not defeat a motion for summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-248, 106 S. Ct. at 2510. A "genuine issue" is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Although the moving party has the burden of showing that there is no genuine issue of material fact, the non-moving party retains the burden of producing enough evidence to support a reasonable jury verdict in its favor. *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 561 (7th Cir. 2005). The non-moving party may not therefore rest on its

4

pleading, "but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Id.*

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a). A party can move for partial summary judgment on any material issue in a case, regardless of whether it may prevail on other issues outside of the scope of its motion. *Ty, Inc. v. Publ'ns Int'l, Ltd.*, 333 F.Supp.2d 705, 708, fn3 (N.D. Ill. 2004).

**B.** **Choice of Law**

Because this court's jurisdiction is based on diversity, Illinois' choice of law rules determine the applicable substantive law. *Sound of Music Co. v. 3M*, 477 F.3d 910, 915 (7th Cir. 2007). Illinois utilizes the "most significant contacts" in deciding choice-of-law disputes with respect to contractual issues. *Hinc v. Lime-O- Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). The relevant contacts under this test are: the place of contracting and negotiation, the domicile, residence, place of incorporation, and business of the parties and place of the performance and location of the subject matter of the contract. *Id.* All except the latter two of these are split equally between Illinois and Michigan. (See, Memorandum Opinion and Order, Dkt. #39, p.7). The performance of the contract was done primarily in Michigan but work was also performed in Illinois and Ohio. (SMF, Ex. A, Marshall Aff., ¶7). The subject matter of the contract was in Michigan. (SMF, ¶6; SMF, Ex. A, Marshall Aff., Ex. 1).

As such, an argument could be made for each state. As the state's laws regarding contract interpretation are essentially the same, Forte will cite law from both states in this memorandum.

## C. The Agreement

In the Agreement, Forte agreed to provide consulting services to Terra and Terra agreed to compensate Forte on a fee basis and on an incentive compensation basis. (SMF, Ex. A, Marshall Aff., Ex. 1). In the Complaint, Forte alleged that Terra breached the Agreement by failing to pay the incentive compensation and refusing to properly calculate those amounts. (Complaint, Dkt. #1, ¶39).

### 1. The Incentive Compensation Formulas

The Agreement contains specific and objective calculations to determine the amounts of the incentive payments. (SMF, Ex. A, Marshall Aff., Ex. 1, pp. 7-8). The first incentive formula is entitled Annual Performance, and provides as follows:

> 1. <u>Annual Performance</u> (for years 2010 and beyond)
>
> - % of EBITDA (excluding ForteONE cost) above 2009 level in each calendar year
>   - 5% from 0 to $500,000
>   - 7.5% from $500,001 to $1,000,000
>   - 10.0% above $1,000,000
>
> - Paid within 30 days of final audited financial statements
> - Computation consistent with 2009 (re owner add backs, etc)
> - EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) is computed using the audited consolidated financial statements. Any owner salary, benefits, etc above the 2009 level will be added back.
> - Annual Performance Incentive terminates at the end for the full fiscal year after the Sale Incentive (below) is paid in full.

(*Id*. at p. 7, §1).

The second incentive formula is entitled Sale Incentive, and provides as follows:

> 2. <u>Sale Incentive</u>
>
> - ForteONE receives a Sale Incentive payment of:

- 1x the incentive bucket if Total Consideration is less than $15.0mm

OR

- 2x the incentive bucket if Total Consideration is $15.0 or above

PLUS

- 5% of Total Consideration above $20,000,000 of Total Consideration

*Example: If company is sold for a Total Consideration of $25.0mm*

- *Sale Incentive:*
  - *2x incentive bucket, plus*
  - *5% of $5.0mm*

ForteONE earns Sale Incentive at earlier of; (i) time of sale (ii) end of engagement or (iii) end of 2012.
- End of engagement buyout required as we need to be at the company to insure it stays on the right path. Involvement could be minimal.
- Can be extended by mutual agreement

- Buy-out at end of 2012 or end of involvement (engagement) based on valuation formula of 5.5 times trailing 12 months adjusted EBITDA,

  *Example: If engagement ends, and Buy-out occurs in July 2011.*
  - *EBITDA July 2010 to June 2011= $4.0mm*
  - *Valuation: $4.0mm x 5.5 = $22.0mm*
  - *Buy-out:*
    - *2x Incentive bucket, plus*
    - *5% of $2.0mm*

- Minimum payment at end of engagement or 2012 is 2x the Incentive Bucket.
- Company Sale means at least 51% of the ownership equity is transferred to a third party or recapitalized (meaning at least 51% of the Enterprise Value of the company is paid to existing shareholders)
- If a division, subsidiary or portion of the company is sold, the full Sale Incentive is earned at that time based upon the valuation formula.
- Tail: if the company is sold within 12 months of an engagement termination, the full Sales Incentive (detailed above) is due.

(*Id*. at 7-8).

### 2. Forte and Terra's Calculation of the Incentive Payments

In July 2011, Forte, utilizing Terra's financial statements, calculated the incentive amounts owed by Terra pursuant to the Agreement, plus late charges, and invoiced Terra the amount of $1,353,427.00. (SMF, ¶¶18-19; SMF, Ex. A, Marshall Aff., ¶¶13-14). The financial statements used by Forte to prepare the invoice included Terra's revenues and expenses relating to the Enbridge project. (SMF, ¶18; SMF, Ex. A, Marshall Aff., ¶13).

Terra refused to pay the invoiced amount, advising Forte that EBITDA relating to Enbridge should not be included in Terra's EBITDA for purposes of calculating the incentive compensation payments. (SMF, ¶20; SMF, Ex. A, Marshall Aff., ¶¶15-16). Pursuant to this litigation, Terra provided its own calculations of the incentive payments under the Agreement and in those calculations Terra did not include EBITDA it asserted was related to the Enbridge project. (SMF, ¶22; SMF, Ex. A, Marshall Aff., ¶17). Based on its calculations excluding the Enbridge-related EBITDA, Terra asserts that it owes the amount of $175,000 to Forte pursuant the Agreement. (SMF, ¶23; SMF, Ex. A, Marshall Aff., ¶18).

### D. Forte is Entitled to Summary Judgment on Terra's Defense to Count I and Count II of the Complaint that the Enbridge EBITDA Should be Excluded from the Incentive Formulas

The main difference in the parties' calculation of amounts owed under the Agreement, and Terra's main defense to Forte's Complaint, is Terra's exclusion of Enbridge's EBITDA from Terra's EBITDA figures. The plain language of the Agreement clearly requires the inclusion of the Enbridge EBITDA in the calculation of the incentive payments. Forte thereby seeks a judgment in its favor on Terra's Enbridge defense and a holding that the plain language of the Agreement requires the inclusion of the Enbridge EBITDA.

### 1. The Agreement is Unambiguous

The determination of whether a contract is ambiguous, as well as the construction of an unambiguous contract, are questions of law for the Court. *Gallagher v. Lenart*, 226 Ill.2d 208, 219 (2007); *Cent. Ill. Light Co. v. Home Ins. Co*., 213 Ill.2d 141, 153-54 (2004); *Rainbow Nails Enterprises, Inc. v. Maybelline, Inc*., 93 F.Supp.2d 808, 820 (E.D.Mich. 2000), citing *Port Huron Educ. Ass'n v. Port Huron Area School Dist*., 452 Mich. 309, 550 N.W.2d 228, 237 (1996). Under the "four corners" and like rules: "[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined by the language used. It is not to be changed by extrinsic evidence." *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992-93 (7th Cir. 2007); *APJ Assocs. v. N.Am. Philips Corp*., 317 F.3d 610, 614 (6th Cir. Mich. 2003). As such, courts first look to the language of the contract alone. *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d at 993 (citing Air Safety, Inc. v. Teachers Realty Corp., 185 Ill.2d 457, 462 (1999)); *51382 Gratiot Avenue Holdings, LLC v. Chesterfield Dev't. Co*., 835 F.Supp.2d 384, 391 (E.D.Mich. 2011); *Wells Fargo Bank, NA v. MPC Investors, LLC*, 705 F.Supp.2d 728, 735 (E.D. Mich. 2010), citing *Haywood v. Fowler*, 190 Mich.App. 253, 258, 475 N.W.2d 458, 461 (1991).

Contract terms are interpreted according to their plain meaning and must also be viewed in context with the entire agreement. *Utility Audit, Inc. v. Horace Mann Serv. Corp*., 383 F.3d 683, 687 (7th Cir. 2004); *Wells Fargo Bank, NA*, 705 F.Supp.2d at 735. If the language of the contract is facially clear and unambiguous, courts interpret the contract as a matter of law without the use of extrinsic evidence. *Camico,* 474 F.3d at 993; *APJ Assoc.*, 317 F.3d at 614; *Wells Fargo Bank NA*., at 735. Only if the contract language is ambiguous is extrinsic evidence admissible to aid in resolving the ambiguity and ascertaining the intent of the parties. *Camico,*

474 F.3d at 993; *Gallagher,* 226 Ill. 2d at 233*; Wells Fargo Bank, NA*, 705 F.Supp.2d at 736, citing *Klapp v. United Ins. Group Agency, Inc*., 468 Mich. 459, 663 N.W.2d 447 (2003). "The fact that parties disagree about the meaning of a contractual provision does not mean the contract is ambiguous." *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.,* 225 F.3d 876, 879 (7th Cir. 2000*); 51382 Gratiot Ave*. *Holdings,* 835 F.Supp.2d at 392. A contract provision is ambiguous only if it is susceptible to more than one reasonable interpretation. *PPM Fin., Inc. v. Norandal USA, Inc.,* 392 F.3d 889, 893 (7th Cir. 2004); *Interim Health,* 225 F.3d at 879; *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.,* 166 Ill. 2d 520, 529 (Ill. 1995); *51382 Gratiot Ave. Holdings*, 835 F.Supp.2d at 391.

There is no dispute that the parties entered into a binding agreement on May 12, 2010. (SMF, ¶¶6-7; Complaint, Dkt. #1, ¶18; Answer, Dkt. #51, ¶¶15, 18; SMF, Ex. C, Taplin Dep., 27:13-28:13, Ex. 1; SMF, Ex. A, Marshall Aff, ¶4, Ex. 1). The scope, process and deliverables of the Agreement are set forth on pages 2-6 of the Agreement. (*Id*). The fees for the project, which include incentive fees, are set forth on pages 6-8. (*Id.*) The provisions and formulas used to determine the trigger and amount of Forte's incentive fees are set forth on pages 7 and 8 of the Agreement. *(Id.)*. The Incentive Formulas clearly and unequivocally only provide for the possibility to exclude (1) Forte's fees; and (2) any owner salary, benefits, etc above the 2009 level from Terra's EBITDA. (*Id.*)

### 2. The Annual Performance Incentive Formula is Unambiguous

The incentive compensation provisions of the Agreement are set forth on pages 7 and 8 of the Agreement. *(Id.)* Terra agreed to a base fee as described therein, agreed to pay 75% of the base fee on a monthly basis and agreed to defer 25% of the base fee in an Incentive Bucket.

*(Id.* at p.7)  Terra also agreed to pay compensation to Forte based on Incentive Formulas.  *(Id.* at pp.7-8).

The first incentive formula is entitled Annual Performance.  *(Id.* at p.7, §1).  As provided in the Agreement, to calculate the Annual Performance incentive the parties agreed to: (1) determine Terra's EBITDA for a particular year using Terra's audited financial statements; (2) adjust the EBITDA to exclude Forte's fees and any owner salary or benefits above the 2009 level; (3) subtract Terra's 2009 EBITDA from the adjusted EBITDA; and (4) apply the calculations in the first bullet of the formula to the resulting figure to determine the amount owed.  *(Id.* at p.7, §1).

The plain language of the Annual Performance incentive fee formula is indisputably unambiguous.  The Agreement defines EBITDA.  *(Id.*, p. 7, §1, first sentence of fourth bullet).  The Agreement provides that EBITDA should be computed using Terra's audited consolidated financial statements.  *(Id.*)  The Agreement provides that EBITDA is adjusted by: (1) excluding Forte's costs; and (2) adding back any owner salary or benefits above the 2009 level.  *(Id.*, p. 7, §1, first bullet, second sentence of fourth bullet).  The Agreement then provides definite benchmarks and percentages for calculating the exact amount owed.  *(Id.*, p. 7, §1, first bullet).  There is simply no room for ambiguity in the Annual Performance Incentive Formula.

### 3. The Sale Incentive Formula is Unambiguous

The second Incentive Formula is entitled Sale Incentive.  *(Id.*, pp. 7-8).  As provided in the Agreement, to calculate the Sale Incentive the parties agreed to: (1) determine which occurred first - (i) time of sale (ii) end of engagement or (iii) end of 2012; (2) if either (ii) or (iii), determine Terra's adjusted EBITDA for the trailing 12 months from the occurrence; and (3) multiply the trailing 12 months EBITDA by 5.5.  *(Id.*, pp. 7-8).  The Sale Incentive fee is 5% of

any amount over $20,000,000 plus 2x the Incentive Bucket (as defined in the Agreement). (*Id.*, p. 7, §2, first bullet; p. 8, second through fourth bullets).

The language of the Sale Incentive formula is unambiguous. The Sale Incentive is payable upon the occurrence of a definite event - the end of Forte's engagement if that occurs prior to a sale of Terra or the end of 2012 (which it did). (*Id.*, p. 8, second bullet; SMF, ¶15; SMF, Ex. C, Taplin Dep., 133:8-10; SMF, Ex. A, Marshall Aff., ¶11). Upon that event, the Agreement provides a clear example of the requisite calculation. (SMF, Ex. A, Marshall Aff, Ex. 1, p. 8, fourth full bullet, Example). Terra's EBITDA for the 12 months prior to the end of engagement is calculated. (*Id.*) The EBITDA is adjusted as described in the Annual Performance section. (See, *Id.*, p. 7, §1, first bullet, second sentence of fourth bullet). The resulting adjusted EBITDA is multiplied by 5.5. (*Id.*, p. 8, fourth full bullet). Forte then receives 5% of any amount over $20 million plus two times the Incentive Bucket. (*Id.*, p. 8, first bullet, fifth full bullet). The Sale Incentive Formula provides an agreed, objective measurement for the payment of the incentive fee to Forte.

### 4. The Plain Language of the Agreement Requires Inclusion of the Enbridge EBITDA

The clear intent of the parties as expressed in the Agreement was to provide an agreed, objective measurement for the payment of incentive compensation to Forte. The Agreement clearly provides for such measurements without any ambiguity.

There is no basis or support in the Agreement for the exclusion of Enbridge's EBITDA from Terra's EBITDA. The Agreement clearly defines EBITDA as Terra's Earnings Before Interest, Taxes, Depreciation and Amortization. There is no dispute that the Enbridge project generated Earnings for Terra. (SMF, ¶13; Ex. A, Marshall Aff, ¶10). The Agreement clearly and unequivocally provides for the exclusion of only two items from Terra's EBITDA: (1)

Forte's fees; and (2) any owner salary, benefits, etc above the 2009 level. (SMF, ¶10; SMF, Ex. A, Marshall Aff, Ex. 1, p.7, §1, first bullet, second sentence of fourth bullet). There is no dispute that the Enbridge EBITDA is not included in either category.

Terra's assertions as to why Enbridge should be excluded from the incentive formulas, i.e, Forte did not earn the compensation, Enbridge was unrelated to Forte's performance, extraordinary one-time events such as Enbridge should not be included in the incentive formulas and the Enbridge revenue was not the result of Forte's performance or recommendations, are wholly without merit and without basis in the Agreement. (*See,* Answer, Dkt. #51, Affirmative Defenses, ¶¶50-66). Even assuming *arguendo* each of the foregoing assertions were true, there are absolutely no provisions in the Agreement which require the application or showing of any of those issues.

Simply, the incentive formulas expressly and unambiguously provide an objective calculation for determining the incentive payments due to Forte. Forte thereby requests that this Court enter judgment in Forte's favor on Terra's defense to Forte's Complaint, enter an order holding that the Agreement is unambiguous and EBITDA relating to the Enbridge project is included in the determination and calculation of the incentive compensation owed to Forte under the Agreement.

    **E.**    **Forte is Entitled to Summary Judgment on its Claim for Contractual Late Charges**

In the Complaint, Forte seeks contractual late charges pursuant to the Agreement. (Complaint, Dkt. #1, ¶40). The Agreement provides:

> Past due invoices are subject to a charge of 1-1/2% per month or part thereof on any outstanding amount.

(SMF, Ex. A, Marshall Aff., Ex. 1, p. 12, §4.2). Forte submitted its invoice to Terra on July 22, 2011. (SMF, ¶19; SMF, Ex. A, Marshall Aff, ¶14, Ex. 2). There is no dispute that Terra has failed to pay any portion of the invoice. As a matter of law, the late charge of 18% per year is permissible under Illinois law and because it is part of the Agreement must be enforced as written. *See, Leaf Funding, Inc. v. Vincent R. Crescenzo, D.D.S. LTD*, No. 10 C 2157, 2011 U.S. Dist. LEXIS 78887, 2011 WL 2960729, at *4-5 (N.D. Ill. July 20, 2011) (awarding prejudgment interest at 18% on future payments because the loan agreement at issue specifically provided that upon any default, all future payments became due and accrued interest at 18% from the date of default until paid in full); *Super 8 Worldwide, Inc. v. American Lodging Partners, Inc.*, No. 08 C 4514, 2011 U.S. Dist. LEXIS 7007, 201 WL 248447, at *7-8 (N.D. Ill. Jan. 25, 2011)(awarding prejudgment interest at a contractual rate through the date of judgment on the original contract); *Telpro, Inc. v. Renello*, No. 92 C 2504, 1994 U.S. Dist. LEXIS 9786, 1994 WL 380607, *12 (N.D. Ill. July 15, 1994) (awarding interest at the contractual rate through the date judgment was entered on the original contract breach).

Therefore, Forte requests that this Court enter summary judgment in its favor on its claim for pre-judgment late charges and enter an order holding that Terra is liable to Forte for pre-judgment charges of 1-1/2% per month beginning on July 22, 2011 for amounts owed and invoiced on that date and on amounts that became and become due on any subsequent dates.

### F. Forte is Entitled to Summary Judgment on Terra's Liability on Count II of Forte's Complaint

In Count II of the Complaint, Forte seeks a Declaratory Judgment that Terra is liable for the Annual Performance incentive fee until the Sale Incentive fee is paid in full. (Complaint, Dkt. #1, Count II, ¶¶45-47). The Agreement provides:

> Annual Performance Incentive terminates at the end for the full fiscal year after the Sate Incentive (below) is paid in full.

(SMF, ¶10; SMF, Ex. A, Marshall Aff., Ex. 1, p. 7, §1, fifth bullet). The Agreement also states that the Annual Performance fee shall be paid "for years 2010 and beyond." (*Id*. at §1, first bullet) There is no dispute that the Sale Incentive has not been paid in full as of the date of this Motion. Therefore, pursuant to the plain language of the Agreement, Forte is currently entitled to payment of the Annual Performance Incentive for 2010-2014 (if Terra paid the Sale Incentive in 2013, the incentive would terminate at the end of the following full fiscal year, 2014). Moreover, Forte is entitled to payment of the Annual Performance Incentive for all subsequent years, and one additional year, during which the Sale Incentive remains unpaid.

Wherefore, Forte requests that this Court enter summary judgment in its favor on Count II of the Complaint and enter an order holding that Terra is liable for payment to Forte of the Annual Performance Incentive fee through the full fiscal year following the payment of the Sale Incentive fee in full.

## **CONCLUSION**

For the foregoing reasons, Forte requests that this Court grant it partial summary judgment and enter judgment in Forte's favor on:

A. Terra's Enbridge defense to Forte's Complaint

B. Forte's claim for pre-judgment late charges; and

C. Count II of Forte's Complaint.

Forte further requests that this Court enter an Order holding that;

D. The Agreement is unambiguous;

E. EBITDA relating to the Enbridge project is included in the determination and calculation of the incentive compensation owed to Forte under the Agreement;

15

F. Terra is liable to Forte for pre-judgment charges of 1-1/2% per month beginning on July 22, 2011 for amounts owed and invoiced on that date and on amounts that became and become due on any subsequent dates.

G. Terra is liable for payment to Forte of the Annual Performance Incentive fee through the full fiscal year following the payment of the Sale Incentive fee in full; and

H. For such other and further relief that this Court deems appropriate.

**FORTECEO SERVICES, INC.**

By: *S/Jeffrey R. Rosenberg*
Jeffrey R. Rosenberg (ARDC #6243770)
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
E-mail: jrosenberg@okgc.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ForteCEO Services, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 11-cv-05179 |
| v. | ) | |
| | ) | |
| Terra Contracting, LLC, et al, | ) | Honorable Joan B. Gottschall |
| | ) | |
| Defendants. | ) | Magistrate Judge Maria Valdez |

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2013 I electronically filed *Plaintiff's Memorandum in Support of Its Motion for Partial Summary Judgment* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following person(s):

James D. Benak
jbenak@jtetzlafflegal.com

Matthew Lawrence Iodice
miodice@tetzlafflegal.com

                                                                                ForteCEO Services, Inc.

                                                                                By: *s/Jeffrey R. Rosenberg*
                                                                                Jeffrey R. Rosenberg # 6243770
                                                                                O'Halloran Kosoff Geitner & Cook, LLC
                                                                                650 Dundee Road, Suite 475
                                                                                Northbrook, Illinois 60062
                                                                                Telephone: (847) 291-0200
                                                                                Fax: (847) 291-9230
                                                                                E-mail: jrosenberg@okgc.com