IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| ForteCEO Services, Inc., d/b/a ForteONE,<br><br>    Plaintiff,<br><br>v<br><br>Terra Contracting, LLC, Terra Abatement Services, LLC, Terra I/S, LLC, PJT Equipment Leasing, LLC, and Down Under Municipal Services, LLC,<br><br>    Defendants. | Case No. 1:11-cv-05179 |

**Amended Non-Movant's Local Rule 56.1(b)(3)(A) Statement in Response to Plaintiff's Rule 56.1(a)(1) Statement**

Defendant-Non-Movant Terra Contracting, LLC, et al., (hereinafter "Terra" or "Defendant"), by its attorneys, and for its Amended Local Rule 56.1(b)(3)(A) Response to Plaintiff's Rule 56.1(a)(1) statement states as follows:

1. Plaintiff, ForteCEO Services, Inc. ("Forte") is an Illinois corporation engaged in the business of providing business consulting services. (Complaint, Dkt. #1, ¶6; Affidavit of David Marshall ("Marshall Aff."), ¶2, attached hereto as Exhibit A).

**Response: Defendant does not dispute the facts contained in Paragraph 1.**

2. As of September 26, 2012, Defendants, Terra Contracting, LLC, Terra Abatement Services, LLC, Terra I/S, LLC, PJT Equipment Leasing, LLC and Down Under Municipal Services, LLC (collectively "Terra") were citizens of Michigan and were engaged in the business of providing, or supporting, environmental remediation services and industrial, sewer and hazardous-material cleaning and abatement services. (Complaint, Dkt. #1, ¶¶7, 10; Defendants' First Amended Answer to Complaint with Affirmative Defenses ("Answer"), Dkt. #51, ¶¶7, 10).

**Response: Defendant does not dispute the facts contained in Paragraph 2.**

3.      From at least 2010 through 2012, Steve Taplin ("Taplin") was the 100% owner of Terra Contracting, LLC, Terra Abatement Services, LLC, Terra I/S, LLC and PJT Equipment Leasing, LLC. Taplin owned 68% of Down Under Municipal Services, LLC prior to January 1, 2011 at which time he became 100% owner of that entity. (Defendant's Responses to Plaintiff's First Set of Interrogatories to Defendant, ¶13, a copy of which is attached hereto as Exhibit B).

**Response: Defendant does not dispute the facts contained in Paragraph 3.**

### Jurisdiction and Venue

4.      Venue and jurisdiction are proper in the United States District Court for the Northern District of Illinois, Eastern Division, because there is complete diversity of citizenship between Forte and Terra, the amount in controversy exceeds seventy-five thousand dollars and a substantial amount of the events set forth in the Complaint took place in this judicial district. 28 U.S.C. § 1332(a)(1); 28 U.S.C. § 1391(a)(2) and (a)(3); (Complaint, Dkt. #1, ¶¶5-9; Memorandum Opinion and Order, Dkt. #39, p.7).

**Response: Paragraph 4 contains legal conclusions to which no response is required.**

### Facts

5.      In or about late February 2010, Terra engaged Forte to provide a detailed assessment of Terra's business. (Ex. A, Marshall Aff., ¶3).

**Response: Defendant does not dispute the facts contained in Paragraph 5.**

6.      On May 12, 2010, Forte and Terra entered into and executed a written agreement (the "Agreement"). (Complaint, Dkt. #1, ¶18; Answer, Dkt. #51, ¶18; Ex. A,

Marshall Aff., ¶4, Ex. 1; Deposition of Steve Taplin ("Taplin Dep."), attached hereto as Exhibit C, 27:13-28:13, Ex. 1).

**Response: Defendant does not dispute the facts contained in Paragraph 6.**

7.    Taplin considers the Agreement and its terms binding on both parties. (Ex. C, Taplin Dep., 28:4-13).

**Response: Defendant does not dispute the facts contained in Paragraph 7.**

8.    Forte began providing (anticipatory) services to Terra in April 2010 and continued providing services pursuant to the terms of the Agreement after May 12, 2010. (Ex. A, Marshall Aff., ¶5).

**Response: Defendant does not dispute the facts contained in Paragraph 8.**

9.    By the terms of the Agreement, 25% of Forte's base fee for its services was deferred in an Incentive Bucket. (Ex. C, Taplin Dep., Ex. 1, p. 7).

**Response: Defendant does not dispute the facts contained in Paragraph 9.**

10.    By the terms of the Agreement, Forte was entitled to incentive payments pursuant to the following formulas:

1. <u>Annual Performance</u> (for years 2010 and beyond)

- % of EBITDA (excluding ForteOne cost) above 2009 level in each calendar year
    - 5% from 0 to $500,000
    - 7.5% from $500,001 to $1,000,000
    - 10.0% above $1,000,000

- Paid within 30 days of final audited financial statements
- Computation consistent with 2009 (re owner add backs, etc)
- EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) is computed using the audited consolidated financial statements. Any owner salary, benefits, etc. above the 2009 level will be added back
- Annual Performance Incentive terminates at the end for the full fiscal year after the Sate [sic] Incentive (below) is paid in full.

2. <u>Sale Incentive</u>

- ForteONE receives a Sale Incentive payment of:

    - 1x the incentive bucket if Total Consideration is less than $15.0mm
  OR
    - 2x the incentive bucket if Total Consideration is $15.0 or above
  PLUS
    - 5% of Total Consideration above $20,000,000 of Total Consideration

  *Example: If company is sold for a Total Consideration of $25.0mm*
    - *Sale incentive:*
        - *2x incentive bucket, plus*
        - *5% of $5.0mm*

**Response: Defendant disputes the completeness of the Annual Performance and Sale Incentive formulae provision supplied by Plaintiff. The complete provision reads as follows:**

1. *<u>Annual Performance</u> (for years 2010 and beyond)*

- *% of EBITDA (excluding ForteOne cost) above 2009 level in each calendar year*
    - *5% from 0 to $500,000*
    - *7.5% from $500,001 to $1,000,000*
    - *10.0% above $1,000,000*

- *Paid within 30 days of final audited financial statements*
- *Computation consistent with 2009 (re owner add backs, etc)*
- *EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) is computed using the audited consolidated financial statements. Any owner salary, benefits, etc. above the 2009 level will be added back*
- *Annual Performance Incentive terminates at the end for the full fiscal year after the Sate [sic] Incentive (below) is paid in full.*

2. *<u>Sale Incentive</u>*

- *ForteONE receives a Sale Incentive payment of:*

    - *1x the incentive bucket if Total Consideration is less than $15.0mm*
  *OR*
    - *2x the incentive bucket if Total Consideration is $15.0 or above*

> *PLUS*
>   - *5% of Total Consideration above $20,000,000 of Total Consideration*
>
> *Example: If company is sold for a Total Consideration of $25.0mm*
>   - *Sale incentive:*
>     - *2x incentive bucket, plus*
>     - *5% of $5.0mm*
>
> *ForteONE earns Sale Incentive at earlier of: (i) time of sale (ii) end of engagement or (iii) end of 2012.*
>   - *End of engagement buyout required as we need to be at the company to insure it stays on the right path. Involvement could be minimal.*
>   - *Can be extended by mutual agreement*

- *Buy-out at end of 2012 or end of involvement (engagement) based on valuation formula of 5.5 times trailing 12 months adjusted EBITDA.*

  > *Example: If engagement ends, and Buy-out occurs in July 2011,*
  >   - *EBITDA July 2010 to June 2011 = $4.0mm*
  >   - *Valuation: $4.0mm x 5.5 = $22.0mm*
  >   - *Buy-out:*
  >     - *2x incentive bucket, plus*
  >     - *5% of $2.0mm*

- *Minimum payment at end of engagement or 2012 is 2x the Incentive Bucket.*
- *Company Sale means at least 51% of the ownership equity is transferred to a third party or recapitalized (meaning at least 51% of the Enterprise Value of the company is paid to existing shareholders)*
- *If a division, subsidiary or portion of the company is sold, the full Sale Incentive is earned at that time based upon the valuation formula.*
- *Tail: If the company is sold within 12 months of an engagement termination, the full Sales Incentive (detailed above) is due.*

**The Annual Performance incentive clause is patently ambiguous. *See* Rule 56.1(b)(1) Tab E, Exhibit E, May 7, 2010 email Phil Kaszar to David Marshall, Forte 11668; *See* Rule 56.1(b)(1) Tab F Exhibit F, Deposition of Philip Kaszar, 184:7-185:9.; *See* Rule 56.1(b)(1) Tab G Exhibit G, Deposition of David Marshall, 102:1-16. The clause states "Computation consistent with 2009 (re owner add backs, etc);" however, no definition or further explanation is given in the Agreement as to what constitutes the "etc." in order to make compensation of EBITDA consistent with 2009 levels. *See* Rule 56.1(b)(1) Tab A, Exhibit A, Agreement by Forte and Terra. The clause also states "EBITDA (Earnings Before Interest, Taxes, Depreciation and**

**Amortization) is computed using the audited consolidated financial statements.** *See* **Rule 56.1(b)(1) Tab A Ex. A, Agreement by Forte and Terra. Any owner salary, benefits, etc. above the 2009 level will be added back."** *See* **Id. Again no definition or further explanation is provided in the agreement as to what constitutes "etc." for computing add backs to EBITDA.** *See* **Id;** *See* **Rule 56.1(b)(1) Tab E, Exhibit E, May 7, 2010 email Phil Kaszar to David Marshall, Forte 11668; Rule 56.1(b)(1) Tab F, Exhibit F, Deposition of Philip Kaszar, 184:7-185:9.; Rule 56.1(b)(1) Tab G, Exhibit G, Deposition of David Marshall, 102:1-16; Rule 56.1(b)(1) Tab L, Exhibit L, Deposition of Jeffrey Conrad, August 29, 2013, 23:4-28:16. Further, any compensation of EBITDA to be consistent with 2009 levels must exclude extraordinary, one-time events such as the Enbridge project** *See* **Rule 56.1(b)(1) Tab J, Ex. J, Deposition of Mark Rittmanic, 87:21-88:11;** *See* **Rule 56.1(b)(1) Tab B, Ex. B, April 25, 2010, email from Mark Rittmanic to David Marshall, Forte 6500;** *See* **Rule 56.1(b)(1) Tab F, Ex. F, Kaszar Deposition, 57:3-17;** *See* **Rule 56.1(b)(1) Tab H, Exhibit H, Expert Report of Shawn Fox, July 1, 2013, p. 27;** *See* **Rule 56.1(b)(1) Tab M, Ex. M, Deposition of Shawn Fox CPA/ABV, CFA, ASA, 73:8-84:22.**

**Forte's selection from the Sales Incentive provision omits reference to adjusted EBITDA. Forte's President Marshall stated that adjusted EBITDA and EBITDA mean the same thing.** *See* **Rule 56.1(b)(1) Tab G, Ex. G, Deposition of David Marshall, 102:1-16. Per the goals identified in the agreement executed by Forte and Terra, Forte's compensation was based on Forte's ability to implement recommendations that increased Enterprise Value.** *See* **Rule 56.1(b)(1) Tab A, Ex. A, Agreement by Forte and Terra; Rule 56.1(b)(1) Tab B, Ex. B, April 25, 2010, email from Mark Rittmanic to David Marshall, Forte 6500;** *See* **Rule 56.1(b)(1) Tab H, Ex. H, Expert Report of Shawn Fox, July 1, 2013, p. 27;** *See* **Rule 56.1(b)(1) Tab M, Ex. M, Deposition of Shawn Fox CPA/ABV, CFA, ASA, 73:8-84:22. It was the understanding of Mr. Taplin, based on page one of the agreement, that the goal of the project was the growth of Enterprise Value of Terra, expressed through an increase of sustainable EBITDA, and that singular events would not contribute to such growth.** *See* **Rule 56.1(b)(1) Tab C, Ex. C, Taplin Deposition, 33:23-34:3; 227:14-228:3; 228:7-13. Further, pursuant to the incentive compensation clause of the Agreement, Terra understood that Forte should not be compensated for revenues received by Terra that were generated outside of Forte's control.** *See* **Rule 56.1(b)(1) Tab N, Exhibit N Deposition of Bruce Reder, 64:22-65:4. The purpose of adjusted EBITDA was to exclude from Forte's compensation one time, non-sustainable events.** *See* **Rule 56.1(b)(1) Tab H, Ex. H, Expert Report of Shawn Fox, July 1, 2013, p. 27;** *See* **Rule 56.1(b)(1) Tab M, Ex. M, Deposition of Shawn Fox CPA/ABV, CFA, ASA, 73:8-84:22;.** *See* **Rule 56.1(b)(1) Tab J, Ex. J, Deposition of Mark Rittmanic, 87:21-88:11;** *See* **Rule 56.1(b)(1) Tab F, Ex. F, Kaszar Deposition, 57:3-17;** *See* **Rule 56.1(b)(1) Tab F, Ex. N, Reder Deposition, 16:14-22. In fact, private equity valuators repeatedly backed out**

the Enbridge profit from Terra's EBITDA. *See* **Rule 56.1(b)(1) Tab N, Ex. N, Reder Deposition, 65:12-17**; *See* **Rule 56.1(b)(1) Tab K, Ex. K, Addendum to Expert Report of Shawn Fox. CPA-ABV, CFA, ASA, July 12, 2013, p. 1;** *See* **Rule 56.1(b)(1) Tab H, Ex. H, Expert Report of Shawn Fox, CPA-ABV, CFA, ASA July 12, 2013, p. 36**

11. Forte began providing (anticipatory) services to Terra in April 2010 and continued providing services pursuant to the terms of the Agreement after May 12, 2010. (Ex. A, Marshall Aff., ¶5).

**Response: Defendant does not dispute the facts contained in Paragraph 11.**

12. Forte provided services to each of the Terra entities (Ex. C, Taplin Dep., 171:6-9; Ex. A, Marshall Aff., ¶6).

**Response: Defendant does not dispute the facts contained in Paragraph 12.**

13. In late July 2010, Terra was engaged by Enbridge Energy Partners, LLP ("Enbridge") to provide contracting services relating to a leak in an underground pipeline that caused an estimated 800,000 gallons of crude oil to spill into a waterway of the Kalamazoo River in Michigan and Terra earned substantial revenues from the Enbridge project in 2010 and 2011. (Ex. A, Marshall Aff., ¶¶8-10).

**Response: Defendant does not dispute the facts contained in Paragraph 13. Further responding, the Enbridge project was an extraordinary one time event that is unlikely to occur again. *See* Rule 56.1(b)(1) Tab C, Ex. C, Taplin Dep., 34:3-4; Rule 56.1(b)(1) Tab N, Ex. N, Reder Dep., 16:10-13). At the time Enbridge occurred, Terra did not operate in the oil spill response business. *See* Rule 56.1(b)(1) Tab C; Ex. C, Taplin Dep., 220:18-22. The Enbridge project was fortuitous and not generated by Forte's involvement with Terra or related to its performance of the agreement. *See* Rule 56.1(b)(1) Tab N, Ex. N, Reder Dep., 16:8-10; Rule 56.1(b)(1) Tab C, Ex. C, Taplin Dep., 31:3-6. In fact, on several occasions, Forte recommended that Terra dissolve its industrial services business – the services that permitted Terra to respond to the Enbridge spill - and remove those services from its marketing materials. *See* Rule 56.1(b)(1) Tab C, Ex. C, Taplin Dep., 34:9-14; 32:5-10.**

Case: 1:11-cv-05179 Document #: 104-1 Filed: 11/06/13 Page 8 of 10 PageID #:2194

14. From July 27, 2010 through December 31, 2012, Bruce Reder ("Reder") was the Chief Financial Officer for Terra Contracting, LLC, Terra Abatement Services, LLC, Terra I/S, LLC, PJT Equipment Leasing, LLC and Down Under Municipal Services, LLC. (Deposition of Bruce Reder ("Reder Dep."), 8:3-9, 9:16-10:6, 29:3-5, attached hereto as Exhibit D).

**Response: Defendant does not dispute the facts contained in Paragraph 14.**

15. Forte's engagement with Terra ended in March, 2011. (Ex. C, Taplin Dep., 133:8-10; Ex. A, Marshall Aff., ¶11).

**Response: Defendant does not dispute the facts contained in Paragraph 15.**

16. In or about April 2011, Reder prepared an EBITDA improvement calculation for 2009 and 2010 based on Terra's audited financial statements and a calculation of the Annual Performance Incentive Fee for 2010 and sent the calculation to Forte on April 26, 2011. (Ex. D, Reder Dep., 21:7-20, 28:17-23; Ex. C, Taplin Dep., 123:8-23; Ex. A, Marshall Aff. ¶12).

**Response: Terra does not dispute the facts contained in Paragraph 15.**

17. Reder's EBITDA improvement calculation included EBITDA relating to Enbridge. (Ex. D, Reder Dep., 27:17-20).

**Response: Defendant incorporates its Response to Paragraph 16.**

18. Sometime thereafter, Forte received Terra's audited financial statements for 2009 and 2010: the 2010 statements included earnings and expenses from the Enbridge project. (Ex. A, Marshall Aff. ¶13).

**Response: Defendant incorporates its Response to Paragraph 16.**

19. On or about July 22, 2011, Forte sent an invoice dated July 15, 2011 to Terra for incentive fee amounts due pursuant to the Agreement. (Ex. A, Marshall Aff., ¶14, Ex. 3).

**Response: Defendant does not dispute the facts contained in Paragraph 19.**

20. Terra advised Forte that it would not pay the amount set forth in the invoice because EBITDA relating to Enbridge should not be included in Terra's EBITDA for purposes of the incentive compensation calculations.

**Response: Defendant does not dispute the facts contained in Paragraph 20.**

21. There is no provision in the Agreement which permits Terra to exclude the Enbridge revenue and expenses from its EIBTDA and by the letter of the Agreement the Enbridge revenues should be included in Terra's EBITDA calculation. (Ex. C, Taplin Dep., 34:15-23; 119:20-120:2, Ex. 1).

**Response: Defendant disputes the allegations of Paragraph 21. Defendant states that Enbridge revenue is to be excluded because Forte's compensation was to be based on its ability to create sustainable increases EBITDA that led to an improvement in enterprise value.** *See* **Defendant's Response to Paragraph 10.**

22. Pursuant to this litigation, Terra provided Forte Terra's calculations of the incentive compensation formulas in the Agreement and in those calculations Terra did not include EBITDA it asserted was related to the Enbridge project. (Ex. A, Marshall Aff., ¶17).

**Response: Defendant does not dispute the facts contained in Paragraph 22.**

23. Based on its calculations excluding the Enbridge-related EBITDA, Terra asserts that it owes the amount of $175,000 in incentive compensation to Forte pursuant [sic] the Agreement. (Ex. A, Marshall Aff., ¶18).

**Response: Defendant does not dispute the facts contained in Paragraph 23.**

Dated:   October 24, 2013

Terra Contracting, LLC, Terra Abatement Services, LLC, Terra I/S, LLC, PJT Equipment Leasing, LLC, and Down Under Municipal Services, LLC

By: ___/s/ James D. Benak_____
              Their Attorney

James D. Benak
ARDC No. 6205007
TETZLAFF LAW OFFICES, LLC
11 South LaSalle Street
Suite 400
Chicago, IL 60603
(312) 574-1000 (T)
(312) 574-1001 (F)
(312) 497-0281 (M)
jbenak@tetzlafflegal.com