UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ForteCEO Services, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 11-cv-05179 |
| v. | ) | |
| | ) | |
| Terra Contracting, LLC, et al, | ) | Honorable Joan B. Gottschall |
| | ) | |
| Defendants. | ) | Magistrate Judge Maria Valdez |

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, ForteCEO Services, Inc. ("Forte"), by its attorneys, and for its reply memorandum in support of its Rule 56 motion for partial summary judgment, states as follows:

**I.   INTRODUCTION**

By its Motion, Forte seeks partial summary judgment on the issue of whether EBITDA relating to Terra's earnings from Enbridge Energy Partners, LLC ("Enbridge") is included in a determination of Forte's incentive compensation under the parties' written agreement ("Agreement"). In its Response, Terra argues that the compensation formulas set forth in the Agreement are ambiguous and should be construed to exclude Enbridge's EBITDA. The main basis for Terra's assertion is the existence of the phrase "Enterprise Value" on the introductory page of the Agreement. Terra argues that this undefined phrase, which it admits does not even have a generally accepted specific definition, requires Forte to only include "sustainable EBITDA," a phrase not mentioned in the Agreement, in the calculation of its incentive compensation.

Terra explains that this outlier approach should be used because EBITDA is not defined in the Agreement. In fact, EBITDA is specifically defined in the Agreement as Earnings Before

Interest, Taxes, Depreciation and Amortization. Using this definition and simply following the steps set forth in the Agreement, anyone can easily and objectively determine Forte's incentive compensation. Conversely, the approach put forth by Terra requires multiple assumptions and determinations for which the Agreement provides no guidance.

In truth, Terra believes the Agreement is not fair and seeks to rewrite it. However, the Agreement clearly sets forth an objective, defined manner of ascertaining incentive compensation. This Court need not go beyond the four corners of the Agreement to find an unambiguous method of calculating amounts owed.

## II. ARGUMENT

### A. Legal Standard

In the Motion, Forte states that the Agreement is unambiguous and should be enforced according to its plain terms. In response, Terra appears to claim that the Agreement is ambiguous and that by use of extrinsic evidence the Agreement should be interpreted and applied in the manner described by Terra. As the issue at hand is the interpretation of a contract, this matter is "particularly suited to disposition by summary judgment." *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir.1993) (quoting *Metalex Corp. v. Uniden Corp. of America,* 863 F.2d 1331, 1333 (7th Cir.1988)).

When interpreting a contract under Illinois law, a court should first ask if the language of the contract is ambiguous, which is a question of law. *Lewitton v. ITA Software, Inc.,* 585 F.3d 377, 379 (7th Cir. 2009). There are two types of contract ambiguity: intrinsic and extrinsic. *Interim Health Care of Northern Illinois, Inc. v. Interim Health Care, Inc.,* 225 F.3d 876, 879 (7th Cir. 2000). A document is intrinsically ambiguous when it is internally unclear or inconsistent or reasonably and fairly susceptible to more than one meaning. *Id.*

Although there has been disagreement through the years, courts construing Illinois law now agree that contracts are interpreted according to the "four corners" rule. *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 600 F. Supp. 2d 976, 981-82 (N.D. Ill. 2009) citing *Camico Mut. Ins. Co. v. Citizens Bank,* 474 F.3d 989, 992-93 (7th Cir. 2007). In applying this rule, courts first look to the language of the contract alone. *Id*. at 993. "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *BP Amoco Chem.,* 600 F.Supp. at 981 *citing Gallagher v. Lenart*, 226 Ill.2d 208, 219, 874 N.E.2d 43, 50 (Ill. 2007).

If the language of the contract is facially clear and unambiguous, courts interpret the contract *without* resort to the use of extrinsic evidence and enforce the agreement as written. *Lewitton, 585 F.3d at 380, citing to Camico at 993*; *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 462 (1999). In evaluating intrinsic ambiguity, the Court must give the words their "ordinary and natural meaning" without questioning the logic of that meaning. *Interim Health Care of Northern Illinois, Inc. v. Interim Health Care, Inc.,* 225 F.3d 876, 880 (7th Cir.2000). The fact that parties disagree about the meaning of a contractual provision does not mean the contract is ambiguous. *Interim Health Care*, 225 F.3d at 879.

Only if the contract language is found to be intrinsically ambiguous is extrinsic evidence *thereafter* admissible to aid in resolving the ambiguity and ascertaining the intent of the parties. *Camico,* 474 F.3d at 993; *Gallagher,* 226 Ill.2d at 233; *Owner-Operator Indep. Drivers Ass'n, Inc. v. Bulkmatic Transp. Co.,* 503 F. Supp. 2d 961, 967-68 (N.D. Ill. 2007), citing *Ryan v. Charmalloy American Corp.*, 877 F.2d 598, 602 (7th Cir. 1989).

Extrinsic ambiguity may exist when a perfectly clear agreement is unclear when applied to the real-world context of the deal. *Interim Health Care,* 225 F.3d at 879. The doctrine of

extrinsic ambiguity is applicable only in very limited circumstances, generally where the literal interpretation of an otherwise clear contract would lead to a result clearly contrary to the parties' intent. *Green v. UPS Health & Welfare Package for Retired Employees*, 595 F.3d 734, 738 (7th Cir. 2010).

B. **The Agreement is Intrinsically Unambiguous**

The first step is an analysis of whether the Agreement is ambiguous based on its plain language. As noted above, extrinsic evidence should not be considered at this juncture. Upon a review of the Agreement, the intent of the parties as to the calculation of Forte's incentive compensation is clear. (*See,* Plaintiff's Memorandum in Support of its Motion for Summary Judgment, Dkt. #87, pp. 10-12). Terra's arguments otherwise are unfounded.

1. **Enterprise Value is not an element of Forte's incentive compensation**

Terra's main argument is that Forte should be paid only for increases in EBITDA that increase Terra's Enterprise Value. (Amended Response of Defendants to Plaintiff's Motion for Partial Summary Judgment ("Response"), Dkt. #104, pp. 3-4)("Terra submits that since Enbridge was an extraordinary one-time event and since the EBITDA created by Enbridge clearly did not increase Terra's Enterprise Value, that Enbridge is not included in Forte's incentive payments"). This interpretation has no support in the plain language of the Agreement. As an initial matter, neither Enterprise Value nor "extraordinary one-time event" is mentioned in the incentive payment provisions of the Agreement. Enterprise Value is one of many goals referenced by Forte in the introductory page of the Agreement – a page without operative or binding terms. (Plaintiff's Rule 56.1 Statement of Material Facts ("Forte's SMF"), Dkt. #88, Ex. A, Marshall Aff, ¶4, Ex. 1, p. 1). Terra ignores the other goals stated therein, several of which are short-term goals, and ignores the fact that the letter implies that there are even more goals that are not

described ("Goals of our project *include*"). (*Id.*, emphasis added). Terra also ignores the other undefined capitalized terms in the introductory letter: "Return on Investment" and "Position of Choice." (*Id.*) Terra essentially chose Enterprise Value at random in the belief it provided the most support to its argument.

Terra admits Enterprise Value is not defined in the Agreement and has no generally accepted meaning. (Amended Non-Movant's Local Rule 56.1(b)(3)(B) Statement of Additional Material Facts, Dkt. #104-2, Nos. 4, 5). Regardless, Terra argues that the words "Enterprise Value" change the EBITDA definition in the Agreement to include only "sustainable" EBITDA and requiring an analysis of what events are sustainable and add long-term value to Terra. (Response, Dkt. #104, p. 15). Incredibly, Terra notes that there is more than one common way to determine a business's Enterprise Value but somehow posits that the one presented in Terra's Response, with no reference to the Agreement, should control Forte's incentive compensation. (*Id.*)

This tortured explanation, created out of whole cloth by Terra, clearly has no support in the actual language of the Agreement and does not create an ambiguity in the Agreement.

### 2. EBITDA is defined and its meaning is clear

Terra next appears to contend that the Agreement is ambiguous because Forte did not define EBITDA in the Agreement. (Response, Dkt., #104, pp. 3, 10). This statement is inexplicable because directly in the incentive formula EBITDA is defined as "Earnings Before Interest, Taxes, Depreciation and Amortization." (Forte's SMF, Dkt. #88, ¶6, Ex. A, Marshall Aff, ¶4, Ex. 1, p. 7, §1, first sentence of fourth bullet).

Terra also argues that the definition of EBITDA is confusing in light of the terms "consistent with 2009 levels" and "owner add-backs." (Response, Dkt. #104, p. 10-11). Terra

5

does not cogently explain its assertion but upon a review of the plain language of the Agreement those references are quite clear. The Agreement provides that Forte will be paid a percentage of Terra's 2010 EBITDA (and beyond) that is above Terra's 2009 EBITDA. (Forte's SMF, Dkt. #88, ¶6, Ex. A, Marshall Aff, ¶4, Ex. 1, p.7, §1, first bullet). Naturally, the computation of 2010 EBITDA should be consistent with Terra's 2009 EBITDA computation. (*Id.* at p.7, §1, third bullet). To ensure consistency, the Agreement provides that "any owner's salary, benefits, etc. above the 2009 level will be added back." (*Id.* at p.7, §1, fourth bullet, see also third bullet). This clear language requires Terra to add back to the 2010 EBITDA any payments to its owners that are in excess of 2009 levels.

Terra's attempt to utilize "etc." as evidence of ambiguity, or worse, as evidence that Enbridge's EBITDA should be excluded, is unfounded. (Response, Dkt. #104, p. 11). Etc. clearly refers to payments to the owner similar to salary and benefit payments. (Forte's SMF, Dkt. #88, ¶6, Ex. A, Marshall Aff, ¶4, Ex. 1, p.7, §1, fourth bullet). There is no credible basis for asserting that the term is ambiguous or was meant to apply to anything else.

### 3. The meaning of adjusted EBITDA is clear

Finally, Terra raises an issue relating to the words adjusted EBITDA, which are contained in the Sale Incentive section. (Response, Dkt. #104, p. 13; Forte's SMF, Dkt. #88, ¶6, Ex. A, Marshall Aff., ¶4, Ex. 1, p.8, first bullet).[1] The words adjusted EBITDA are not a separately defined term and are easily interpreted under the clear language of the Agreement. As noted, EBITDA is already defined in the Agreement. (*Id.* at p. 7, §1, fourth bullet). The word "adjusted" should be given its plain and ordinary meaning. In Section 1 of the incentive compensation provision, EBITDA is adjusted for: (1) Forte's costs; and (2) owner add-backs. (*Id.* at p.7, §1, first and fourth bullets). There is absolutely no other reference or suggestion in

---

[1] Terra's use of extrinsic evidence to interpret EBITDA and adjusted EBITDA is addressed in section C below.

the Agreement that adjusted EBITDA has any different meaning than is plainly evident from the language of the Agreement.

      C.      **The Agreement is Extrinsically Unambiguous**

The doctrine of extrinsic ambiguity is applicable only in very limited circumstances. *Green v. UPS Health & Welfare Package for Retired Employees*, 595 F.3d 734, 738 (7th Cir. 2010) *citing Chi. Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.,* 713 F.2d 254, 258 (7th Cir.1983). The doctrine only applies in situations where the parties "couldn't have meant what they seem to have said ... because of the context in which the contract had been intended to apply." *Asta, L.L.C. v. Telezygology, Inc.*, 629 F. Supp. 2d 837, 847 (N.D. Ill. 2009) *citing Pierce v. Atchison, Topeka and Santa Fe Ry. Co.,* 65 F.3d 562, 568 (7th Cir.1995). In such a case, a party may present extrinsic evidence to "demonstrate that the clear language of a contract does not reflect the parties' true intention. *Green*, 595 F.3d at 738.

No extrinsic ambiguity exists in the instant case. The extrinsic evidence presented by Terra fails to show the parties did not intend to convey what the language of the Agreement provides. Terra first proffers communications between Forte personnel discussing the draft language of the Agreement. (Response, Dkt. #104, pp. 11-14). As an initial matter, Terra's references to "Rittmanic" and "Kaszar" are inadmissible and ineffective as Terra fails to identify the individuals and fails to state what involvement each had in drafting, negotiating or interpreting the Agreement. In any event, the cited testimony does not evidence that the parties intended to convey a different result than the terms actually used in the Agreement. The communications are simply internal communications among Forte personnel commenting upon the draft language of the Agreement. There are no references to any intention to exclude extraordinary events, include only sustainable EBITDA or otherwise limit or alter Terra's

EBITDA. Moreover, there is no evidence of communications *between* Terra and Forte regarding what the parties intended to convey by the Agreement.

Terra then seeks to introduce testimony of its own expert and evidence of technical definitions of EBITDA and Adjusted EBITDA. (Response, Dkt. #104, p. 15-16). As an initial matter, expert evidence is inadmissible as to dispositive legal conclusions, such as the interpretation of a contract. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Moreover, there is no evidence that the parties ever referred to or considered the technical definitions (or the opinions of Terra's expert) in drafting and agreeing to the terms of the Agreement. Definitions of which the parties were unaware could not aid in clarifying their intent in entering the Agreement. Further, rather than clarifying the Agreement, the cited definitions and hand-picked testimony would render the Agreement unusable as they do not provide any cogent, objective or definite methods for deciding what should and shouldn't be included in calculating the incentive compensation.

Finally, Terra presents evidence of the sale price of the company in December 31, 2012, nearly two years after Forte's engagement with Terra ended. (Response, Dkt. #104, p. 16; Forte SMF, Dkt. #88, ¶15). The Agreement expressly provides that the sale price of Terra is only applicable if the sale occurs within 12 months of the termination of the engagement. (Forte SMF, Ex. A, Dkt. #88-1, Marshall Aff., Ex 1, p. 8, fifth bullet). As such, the sale price is not relevant to a determination of Forte's incentive compensation under the Agreement. Moreover, there is no admissible evidence as to the basis, or appropriateness, of the price paid.

The foregoing attempts by Terra to cast doubt on the express language of the Agreement are far too vague to be effective. The doctrine of extrinsic ambiguity is an exception to the rule that contracts should be enforced as written and should thus be interpreted narrowly. *Young v.*

*Verizon's Bell Atl. Cash Balance Plan*, 575 F. Supp. 2d 892, 907-08 (N.D. Ill. 2008) *citing PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 615 (7th Cir.1998). Extrinsic evidence purporting to show extrinsic ambiguity should be kept out unless objective evidence makes "a compelling case that the contract means other than what it seems to mean." *Id*.

Terra cannot show that the Agreement means other than what it explicitly states. Terra simply seeks to rewrite the contract to state what it now wishes it had agreed to.

### D. Forte is Entitled to Summary Judgment on its Claim for Contractual Late Charges and Terra's Liability on Count II of Forte's Complaint

Terra failed to raise any arguments in response to Forte's claims for contractual late charges and Terra's liability for the Annual Performance incentive fee until the Sale Incentive fee is paid in full. As such, Forte is entitled to summary judgment on those two issues.

### CONCLUSION

For the foregoing reasons, Forte requests that this Court grant it partial summary judgment and enter judgment in Forte's favor as requested.

**FORTECEO SERVICES, INC.**

By: *S/Jeffrey R. Rosenberg*
Jeffrey R. Rosenberg (ARDC #6243770)
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
E-mail: jrosenberg@okgc.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ForteCEO Services, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 11-cv-05179 |
| v. | ) | |
| | ) | |
| Terra Contracting, LLC, et al, | ) | Honorable Joan B. Gottschall |
| | ) | |
| Defendants. | ) | Magistrate Judge Maria Valdez |

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2013 I electronically filed *Plaintiff's Reply Memorandum in Support of its Motion for Partial Summary Judgment* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following person(s):

James D. Benak
jbenak@jtetzlafflegal.com

Matthew Lawrence Iodice
miodice@tetzlafflegal.com

                    ForteCEO Services, Inc.

                    By: *s/Jeffrey R. Rosenberg*
                    Jeffrey R. Rosenberg # 6243770
                    O'Halloran Kosoff Geitner & Cook, LLC
                    650 Dundee Road, Suite 475
                    Northbrook, Illinois 60062
                    Telephone: (847) 291-0200
                    Fax: (847) 291-9230
                    E-mail: jrosenberg@okgc.com