# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FORTECEO SERVICES, INC., d/b/a FORTEONE, ) ) ) Plaintiff, ) ) v. ) ) TERRA CONTRACTING, LLC; TERRA ) ABATEMENT SERVICES, LLC; TERRA ) I/S, LLC; PJT EQUIPMENT LEASING, ) LLC; and DOWN UNDER MUNICIPAL ) SERVICES, LLC, ) ) Defendants. ) | Case No. 11 CV 5179 Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

Plaintiff ForteCEO Services, Inc. sued defendants Terra Contracting, LLC; Terra Abatement Services, LLC; Terra I/S, LLC; PJT Equipment Leasing, LLC; and Down Under Municipal Services, LLC; alleging breach of contract and seeking a declaratory judgment. Now before the court is Forte's motion for partial summary judgment on its claim for declaratory judgment. For the reasons stated below, the motion is granted.

### I. BACKGROUND

The following facts are not disputed unless indicated otherwise.

Forte is an Illinois corporation that provides business-consulting services. As of September 26, 2012 (the date on which the defendants answered the complaint), the defendants (collectively, Terra) were citizens of Michigan and were engaged in the business of providing, or supporting, environmental-remediation services and industrial, sewer and hazardous-material cleaning and abatement services. From at least 2010 through 2012, Steve Taplin was the 100%

owner of Terra Contracting, LLC; Terra Abatement Services, LLC; Terra I/S, LLC, and PJT Equipment Leasing, LLC. Taplin also owned 68% of Down Under Municipal Services, LLC before January 1, 2011, at which time he became its 100% owner.

In February 2010, Terra engaged Forte to provide a detailed assessment of Terra's business. On May 12, 2010, Forte and Terra entered into and executed a written agreement detailing the "scope, process, and deliverables" of the project. One of the goals of the project is to "[i]mplement recommendations from the Business Assessment report that will grow sales, profits, and Enterprise Value." (Agreement 1, ECF No. 88-4.)

In his deposition, Taplin indicated that he considers the agreement binding on all parties. Forte began providing anticipatory services to Terra in April 2010, and continued providing services pursuant to the terms of the agreement after May 12, 2010. Forte's engagement with Terra ended in March 2011.

By the terms of the agreement, 25% of Forte's base fee for its services was deferred into an incentive bucket. Forte was entitled to incentive payments based on annual-performance and sale-incentive formulas detailed in the agreement. The parties dispute how the formulas work, but agree that they are tied in part to Terra's EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization).

In July 2010, Enbridge Energy Partners, LLP engaged Terra to provide contracting services relating to a leak in an underground pipeline that caused an estimated 800,000 gallons of crude oil to spill into a waterway of the Kalamazoo River in Michigan. Terra earned substantial revenue from the Enbridge project in 2010 and 2011.

Bruce Reder was Terra's chief financial officer from July 27, 2010 through December 31, 2012. Around April 2011, Reder prepared an EBITDA-improvement calculation for 2009 and

2010 based on Terra's audited financial statements and a calculation of the Annual Performance Incentive Fee for 2010. Reder sent the calculation to Forte on April 26, 2011. The EBITDA-improvement calculation included EBITDA relating to the Enbridge project. Sometime thereafter, Forte received Terra's audited financial statements for 2009 and 2010. The 2010 statements included earnings and expenses from the Enbridge project.

Forte sent an invoice dated July 15, 2011 to Terra for incentive-fee amounts due pursuant to the parties' agreement. Terra advised Forte that it would not pay the amount set forth in the invoice. Terra told Forte that EBITDA relating to Enbridge should not be included in Terra's EBITDA for purposes of the incentive-compensation calculations.

In connection with this litigation, Terra provided Forte with its calculations of the incentive-compensation formulas in the agreement, totaling $175,000. In those calculations, Terra did not include EBITDA it asserted was related to the Enbridge project. Forte argues that revenue and expenses from the Enbridge revenue should have been included in Terra's EBITDA calculation.

The agreement's incentive-formula provision states:

> **Incentive Formula:**
>
> 1. <u>Annual Performance</u> (For years 2010 and beyond)
>
>    - % of EBITDA (excluding ForteONE cost) above 2009 level in each calendar year
>      - 5% from 0 to $500,000
>      - 7.5% from $500,001 to $1,000,000
>      - 10.0% above $1,000,000
>
>    - Paid within 30 days of final audited financial statements
>    - Computation consistent with 2009 (re owner add backs, etc)
>    - EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) is computed using the audited consolidated financial statements. Any owner salary, benefits, etc above the 2009 level will be added back.

3

- Annual Performance Incentive terminates at the end for [sic] the full fiscal year after the Sale Incentive (below) is paid in full.
2. <u>Sale Incentive</u>

    - ForteONE receives a Sale Incentive payment of:
    - 1x the incentive bucket if Total Consideration is less than $15.0mm
    - 2x the incentive bucket if Total Consideration is $15.0[mm] or above
    - 5% of Total Consideration above $20,000,000 of Total Consideration
    - *Example: If company is sold for a Total Consideration of $25.0mm*

        o Sale Incentive:
            o 2x incentive bucket, plus
            o 5% of $5.0mm

ForteONE earns Sale Incentive at earlier of[:] (i) time of sale (ii) end of engagement or (iii) end of 2012.
- End of engagement buyout required as we need to be at the company to insure it stays on the right path. Involvement could be minimal.
- Can be extended by mutual agreement
- Buy-out at end of 2012 or end of involvement (engagement) based on valuation formula of 5.5 times trailing 12 months adjusted EBITDA.

    *Example: If engagement ends, and Buy-out occurs in July 2011,*
    o *EBITDA July 2010 to June 2011 = $4.0mm*
    o *Valuation: $4.0mm x 5.5 = $22.0mm*
    o *Buy-out:*
        o *2x incentive bucket, plus*
        o *5% of $2.0mm*

- Minimum payment at end of engagement or 2012 is 2x the Incentive Bucket.
- Company Sale means at least 51% of the ownership equity is transferred to a third party) [sic] or recapitalized (meaning at least 51% of the Enterprise Value of the company is paid to existing shareholders)
- If a division, subsidiary or portion of the company is sold, the full Sale Incentive is earned at that time based upon the valuation formula.
- Tail: If the company is sold within 12 months of an engagement termination, the full Sales [sic] Incentive (detailed above) is due.

(Agreement 7-8, ECF No. 88-4.)

4

Forte seeks an accounting to determine the appropriate amount of Annual Performance Incentives to which it is entitled for 2011 and beyond, and for a declaration of its entitlement to these payments.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

Forte invokes this court's jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) because the defendants are citizens of Michigan and Forte is a citizen of Illinois. When a federal court sits in diversity, it applies state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (construing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). To determine which state's substantive law governs, the court applies the forum state's choice-of-law rules. *Auto-Owners Ins. Co. v. Websolve Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).

## III. ANALYSIS

### A. Choice of Law

As a preliminary matter, the court must determine what state's substantive law applies under Illinois's choice-of-law rules. "Where neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply

the forum state's substantive law." *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995). Here, the defendants tell the court that Illinois law governs this case. Forte tells the court that "an argument could be made" that either Illinois or Michigan law applies, but that "the state's laws regarding contract interpretation are essentially the same." Accordingly, the court applies Illinois substantive law.

**B.     Agreement Terms**

The parties agree that Terra's EBITDA is an input into the incentive-payment calculation. But the parties dispute the appropriate amount of incentive-compensation payments that Terra must pay to Forte under the agreement. Forte argues that it should include Terra's EBITDA attributable to the Enbridge project, but Terra disagrees.

Under Illinois law, "[t]he primary goal of contract interpretation is to give effect to the intent of the parties, as shown by language in the contract. In determining the intent of the parties, a court must consider the document as a whole and not focus on isolated portions of the document. If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself. That language should be given its plain and ordinary meaning and the contract enforced as written. The interpretation of a contract is a question of law and may, therefore, be decided on a motion for summary judgment." *Palm v. 2800 Lake Shore Drive Condo. Ass'n*, 10 N.E.3d 307, 327-28 (Ill. App. Ct. 2014) (internal citations omitted). Thus, the court must enforce the terms of the contract if the terms are clear and unambiguous.

Terra argues that the contract does not define "EBITDA," that "EBITDA" is ambiguous, and that the court should consider extrinsic evidence to determine what the parties meant. The court finds this argument unavailing. EBITDA is not an obscure term whose meaning must be

6

ascertained with the aid of extrinsic evidence; it is a financial metric "that investors commonly rel[y] upon." *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp.2d 158, 179 (S.D.N.Y. 2003); *see also Royal Ten Cate USA, Inc. v. TT Investors, Ltd.*, 562 F. App'x 187, 188 n.1 (5th Cir. 2014); *Steiner Corp. v. Benninghoff*, 5 F. Supp. 2d 1117, 1130 (D. Nev. 1998); Dictionary of Accounting Terms 171 (6th ed. 2014). The incentive-formula provision gives the long-form of the acronym and states that EBITDA is to be "computed using the audited consolidated financial statements." (Agreement 7, ECF No. 88-4.) The court concludes that the term "EBITDA" "is clear and unambiguous, [thus] the intent of the parties must be determined solely from the language of the contract itself." *Palm*, 10 N.E.3d at 328.

There is no real dispute that the revenue and expenses from the Enbridge project would ordinarily be included in an ordinary total-EBITDA calculation. But Terra argues that the goal of the agreement was to grow Terra's enterprise value. It notes that the Enbridge project was a one-time event that did not increase Terra's enterprise value. Accordingly, Terra believes that the term "EBITDA" in the incentive-formula provision "clearly indicates only sustainable EBITDA and would not include extraordinary one-time events like Enbridge." (Am. Resp. 16, ECF No. 104.)

Essentially, Terra invites the court to transform the word "EBITDA" in the incentive-formula provision into "sustainable EBITDA." The court declines the invitation to alter the fundamental terms of the provision. The language of the provision is clear and unambiguous that *all* EBITDA above Terra's 2009-EBITDA level should be included as an input in calculating Forte's annual-performance incentive.

Terra is correct, of course, that one of the purposes of the provision is to provide Forte with an incentive to grow Terra's enterprise value. But determining the enterprise value of a

privately held company is often a difficult task requiring some conjecture in the form of "a risk-adjusted discounted cash flow analysis of its future profit streams." *Okerlund v. United States*, 365 F.3d 1044, 1048 (Fed. Cir. 2004). The court finds it eminently reasonable that the parties would not want to go through a lengthy valuation process every time Forte's bill came due.

Instead, the parties contracted to use EBITDA based on Terra's audited financial statements as a proxy; as Terra states: "To incent ForteONE to grow Terra's Enterprise Value, Terra agreed to pay ForteONE a percentage of those increases, measured as a multiple of cash flow, or EBITDA." (Am. Resp. 3, ECF No. 104.) Terra itself acknowledges that EBITDA has a "clear[] link" to enterprise value. (*Id.*)

To be sure, EBITDA is not a perfect proxy for the value that Forte added to Terra. (For that matter, neither is enterprise value; Terra's future streams of cash flow could increase or decrease independently of Forte's actions). One-time events such as the Enbridge project may have an "unsustainable" effect on EBITDA. To solve this problem, Forte and Terra could have contracted to tie incentive compensation to "sustainable EBITDA" or some other metric—but they didn't. Despite its deficiencies, the parties chose plain-vanilla EBITDA as the metric upon which Forte would receive its incentive compensation. That choice is a rational one, and the court finds as a matter of law that enforcing the incentive-formula provision as written does not frustrate the underlying goal of the contract. Rewriting the contract or making EBITDA adjustments after-the-fact to suit Terra's needs would violate the court's task of upholding the "plain and ordinary meaning" of the contract's terms. *See Palm*, 10 N.E.3d at 328.

The agreement terms unambiguously require Terra to include EBITDA, sustainable or otherwise, in its calculation of Forte's incentive payments. The court grants Forte's motion for partial summary judgment as to Count II of its complaint. Terra is ordered to provide an

accounting to determine the amount of annual-performance incentive payments to which Forte is entitled.

The memorandum of law accompanying Forte's motion for partial summary judgment appears to seek summary judgment on its claim for contractual late charges and for "the Annual Performance incentive fee until the Sale Incentive fee is paid in full." But in its reply brief, Forte clarifies that it seeks partial summary judgment solely "on the issue of whether EBITDA relating to Terra's earnings from Enbridge . . . is included in a determination of Forte's incentive compensation under the parties' written agreement . . . ." (Pl.'s Reply Mem. 1, ECF No. 105.)

To the extent that Forte seeks a ruling on additional issues now, the court denies the motion. It would be premature to decide these issues before Terra clarifies the fixed amount due for the annual-performance incentive. Once Terra has provided an accounting and Forte has determined the amounts it seeks, Forte may seek leave to file another motion for summary judgment on the remaining issues.[1]

### IV. CONCLUSION

For the reasons stated above, Forte's motion for partial summary judgment as to Count II of its complaint is granted. Terra shall provide Forte with an accounting to determine the appropriate amount of performance-incentive payments inclusive of EBITDA from the Enbridge project by October 17, 2014.

---

[1] The court has a great deal of difficulty understanding the convoluted argument that Forte makes in Section III.F of its memorandum in support of its motion for partial summary judgment. If Forte files a new motion for summary judgment, Forte is advised to explain why it is entitled to incentive compensation for years in which it provided no consulting services to Terra.

ENTER:

　　　　/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 4, 2014